Good morning, Your Honors. I'm Charles Lotsoff. I'm representing the appellant. With me is co-counsel Jack Schweigert. Go ahead. Thank you. The court sent up a note to the counsel asking whether the counsel would address the question of whether a case called Filarski or a case on the other hand called Richardson would be applicable in this situation. I urge the court that the Richardson case is the one that's clearly the right one. And what was important in that case and what's important in our case is that the payment of the employee or whatever he's going to be called was coming not from the state or the city, not from the government, but from a private source. Payment is the essence of this case. Payment is the every feature of this legal case. In addition to the payment feature, there's the question of the function that the governmental official, if he was a governmental official, was undertaking. If in the Bracken situation the security guard or actually a uniformed policeman were doing something like arresting Mr. Bracken, then there could be a function that could say it's more likely that a policeman, a governmental official would do that. But it's important to notice that there was no arrest. From the beginning, they're saying you're being trespassed. Being trespassed is not a government function. Being trespassed is a given a form, a hotel issued printed hotel form saying don't come back for a year. That's a term used here. It is a term of art, but it's widely understood. To be trespassed means just that, to be issued a form telling you not to come back. If you come back, you will be considered in violation of the trespass law. Their whole objective, what the policeman said repeatedly to Mr. Bracken, was to be trespassed. So my point is that this is not a governmental function. And so even under Filarski and Richardson, there's no governmental activity that's involved in this situation. It's just a warning form. What's critical is that the person involved in this altercation, the officer Chung, was acting in the interest of the hotel. It's a hotel. It's got a nightclub. I noticed that there's a statement that it was a private party. That isn't exactly accurate. It was a cover charge that was being imposed only that one night. The plaintiff had never been there when there was a cover charge before and didn't know about the cover charge. It Let me ask you, let's assume for a moment that they're not entitled, he's not entitled to the doctrine of qualified immunity. That doesn't apply here. What's the theory of your substantive claim? The theory is that somebody... He wasn't arrested, right? No, he was not arrested. He was beaten up and detained and taken into... Abducted is the word I'd like to use. He was seized. Is it an excessive force claim? Very much an excessive force, a wildly excessive force. And this is exactly what's really significant here. What the role was of the police officer. How did he impact the situation? How did it get out of control? And this is something that's extremely clear and interesting and we're very lucky to have this wonderful video recording which addresses that so clearly. What happened here, and you can follow it, is the first part, I think it's a minute and 27 seconds, and it tells you everything. The policeman is insistent that he wants... What did he say? Okay. But he's insisting on this even when the plaintiff says, I can't give you a asterisk ID. Mr. Okura, the security guard, is holding on to my arm. Okura was holding on to Bracken's left arm and immobilizing it at the time. What does the policeman say at this juncture? He says, then put away your phone. It wasn't really a phone, but Bracken was outstretched doing a selfie with his camera. The policeman is saying, put away your phone. This wouldn't have enabled Bracken to get his wallet, which was in his left rear pocket, because the security guard, Okura, was still holding on to him. So what's going on is that the policeman is giving an order to get rid of your phone, get away, I don't know what he's supposed to do with it, drop it, I guess. But that wouldn't have helped him, and the policeman then keeps going on saying, I need an ID, I need an ID, and rapid fire. What is going on here is that the policeman is signaling Okura that Okura can do this, that the policeman doesn't mind. I'm just doing a recitation right here and reading the complaint and whatnot. The allegation is not that the officer, Chung, physically beat or struck or... That's correct. It was this private officer and the other, the private guard and the other people. The other security guards. And what is important here is that, and what I'm getting at, what I was saying, is that Okura and the others were enabled by this and he was signaling them that they can go on incrementally, increasingly violent. Every stage of the violence is a separate, increased escalation. And in every case, they do something, they look to the policeman to say, are you going to stop this? And he doesn't. He's encouraging them, he's emboldening them. The witness... So it's, the theory is that he created the case, yes. He not just created it, but he exacerbated it. He was the one who's there and what I was starting to say was that Klink, Paul Klink, the impartial witness who walked on his way to the restaurant and took the picture that's, this dramatic exhibit that shows Mr. Bracken on the ground with all these security guards on top of him and what Klink mentioned was, and it's quoted in the excerpts, I had to assume that the police officer would interfere because otherwise Dylan was going to be hurt and really badly. This is the role of a policeman who's present in uniform and he's having an impact. The impact is he's emboldening these security guards and he's not interfering and he was integrally involved and the district court found that he was integrally involved in the detention. He did something that... I mean, when you say not interfering, you mean he was not interceding on behalf of... Yes, interceding is of course the right word. And the combination of having been the one to initially stop and there's a dialogue that relates back to the role of the security guard or policeman or whatever he was because his role is not just an ordinary person who's as a security guard stopping somebody to inquire. He's a policeman. He's got to be obeyed. It's this incredible confusing kind of contradictory hybrid role that's the thing that's the evil that's behind this whole thing. I have to urge the court that the whole concept of what we call special duty is unconstitutional in itself. Was he in uniform? Absolutely. And he had his badge visible. Absolutely. So as far as the public would understand, he was law enforcement. That's what Klink insists that was a factor. And yes, that's obviously true. But he wasn't acting in a governmental capacity. So that's why you're saying he doesn't qualify for qualified immunity. Exactly. He's in a deceptive capacity. He's doing more harm than good. And that's the district court said that it depended on whether there was a conspiracy. A conspiracy would be a plan ahead of time. And the district court required a conspiracy. This isn't a conspiracy. This is worse than a conspiracy. It's a complete signaling that you can get away with it. It's made things worse. If there were a conspiracy, that would be planning right in advance. But this is an interactive game. They're interacting as they play the game out. It isn't an effect. It isn't functionally any different from a actual conspiracy or advance plan. Did you want to save some time for rebuttal? I think I better. Okay. Good. We'll hear from the other side. Thank you. Judge Paez, and may it please the court, Sarah Kaskin for Defendant Appelee. On appeal, plaintiff has only challenged the district court's summer judgment order as to plaintiff's state law court claims, his Section 1983 unlawful seizure claim, and his Section 1983 failure to intercede claim. The district court's order granting summary judgment in favor of defendant should be affirmed because there are no genuine issues of material fact and Officer Chung is entitled to judgment as a matter of law. The undisputed facts in this case viewed in the light most favorable to Mr. Bracken are these, that Mr. Bracken trespassed when he did not pay the cover charge at a New Year's Eve celebration on the hotel property. The hotel security guard, Mr. Okura, saw Mr. Bracken enter illegally and stopped by grabbing him by his shoulder. Mr. Bracken attempted to get away from Mr. Okura. Mr. Okura followed him and stopped him again. At that point, Officer Chung arrived to where the two were standing and Mr. Okura informed Officer Chung that he was going to issue Mr. Bracken a trespass notice. And then Officer Chung asked Mr. Bracken repeatedly for his ID, which Mr. Bracken did not provide. Now, counsel says this because Okura had his hand on his arm so he can't reach his wallet and he's got his phone in his right hand, I guess, and Chung is saying, put the phone away. The video that he refers to shows Mr. Bracken never saying, I'll provide it for you. He says why he can't and then he says that Mr. Okura needs to let him go because he wants to leave. So there's not evidence in the record to show that he was... Which is what they were asking him to do. At that... Leave or we'll trespass you. At the point that Mr. Okura had grabbed him by the arm, the security guards had already made the decision that they were going to give him a trespass notice, which is actually a written piece of paper. I understand it is, but counsel said that's future. It's like a warning. If you come back, you're going to get trespass filed against you. So as far as... Is that right? The way that the trespass notice works is when somebody's come on the property and the property does not want them to return for a year, then the term is that they've been trespassed. And they get that notice and should they come on again within the year, then they call and they call the police. That's essentially what he said. So there's this confrontation and Okura grabs him by the arm and says, I want your ID. Meanwhile, Bracken is videoing this and Chung comes up and he says, put away the phone. Now, you say on the video, and I'm not sure if you agree, I think that's right. Bracken is saying, I want to leave. Okay? That's what they want him to do. So you're saying that he's being held by Okura so Okura can write the trespass piece of paper. Is that it? Your Honor, yes. That's my understanding of what the hotel security guards were planning to do with him. Okay. Well, he didn't know that. And that is, he's got his arm grabbed and he's trying to comply, apparently. And he says, I want to leave, which is what they were telling him to do. So I'm not sure where you're going with this. Keep going, you know? I don't understand so far. I'm not quite understanding the problem except that the situation with the security guards desire to issue a trespass notice is what the hotel staff were doing and it wasn't a decision that Officer Chung was involved in. Officer Chung asked him for his ID. He didn't provide it. You asked him for the ID? Officer Chung had asked him for the ID. Okay, he asked for the ID. Why did he want the ID? Because he had been told that they wanted to trespass him. So he was cooperating with Okura. He was asking for the ID. Yeah. At that point, then Mr. Okura and other security guards, without any direction in the record from Mr. Chung, without any knowledge in the record from Officer Chung, took Mr. Bracken to the ground, cuffed him, and took him down to the security office to give him, issue the trespass notice. So when this took place, what was the role of Chung? Was he working for the hotel? I would love to address that question. And he was not. Was he working for the Hawaii Honolulu Police Department? Yes, and if I could explain the HPD security, the special duty program, and the role of the facts in the record as to that program? Go ahead. It's your turn. It's my turn. That's why we're here. We sort of hinted that a critical issue here is whether or not this officer is entitled to qualified immunity under these circumstances, to invoke the doctrine. Absolutely, absolutely. And in fact, I'll go right to the beginning of that argument here, which is, of course, for there to be a 1983 violation, there needs to be a right that's being violated that's secured by the Constitution, and the violation is committed by a person acting under color of law. Now, Mr. Bracken conceded in his fourth amended complaint at paragraphs 37 to 39, and the district court agreed that Officer Chung, while on his HPD special duty assignment, was acting under color of state law. That's the position of the official defendants, correct? And that is a concession of Mr. Bracken. How about the defendants? He was acting under color of law. Oh, absolutely, absolutely. Yes, Your Honor. You got that settled. Yes, Your Honor. But Mr. Bracken argues that even though Officer Chung was acting under color of state law, he was not a state actor. So, borrowing from Filarski's argument before the 9th Circuit, I would submit that whether Officer Chung is on special duty or regular duty, it is a, quote, distinction without a difference. Is there a difference in terms of what his obligations are when he's working as a special duty assignment versus working as an on-duty officer? Not that I am aware of or is in the record. Well, the one difference is payment, right? Well, he's paid by the private company. Right, and the district court correctly considered that, and looked at the documents that were provided about the $210 check that was made out to Officer Chung by the hotel. What about the scope of responsibilities and who gets to control it? So, let's say he's working private security, wearing his uniform, raucous party, lots of things to do, there's commotion down the street. Now, if an officer's on duty, presumably the officer would run down the street to investigate that. Would the special duty officer have the same obligation or is his obligation to work the party? And if you would repeat, you're talking about, because we're talking about a special duty... Right, well, who is that special duty to? The employer who hired him to provide the security? Or is he working for the benefit of the general public as he otherwise would have the obligation to do if he's in uniform and on duty? In the view of the special duty officer, he's working in his role as an HPD officer serving his government responsibility to the public. What is a little bit different is, granted, he's on private property that, of course, the public is coming in and out, and because he's in full uniform, and he has all of his badges and all of the that goes with being an HPD officer, because he cannot have this job without it being part of the HPD program, and the only way that these private individuals are able to obtain the services of the special duty officers is to go and make a request through the HPD program, and when the HPD officer arrives at his special duty, he has to first check in to the district HPD office in that district, and he has to follow the code of conduct, the standards of conduct of HPD. Does HPD pay overtime? Did he get paid by the HPD in addition to getting paid from the hotel? No, because overtime duty is a different avenue, and in fact, there are situations, especially at bigger events, where you will have regular duty officers, you will have regular duty officers that are doing overtime, and you will have special duty officers. Right, so if he's being paid overtime, he would be considered to be on duty, right? Right, but because he's working special duty, he's officially considered by the Honolulu PD to be an off-duty officer. They don't use that term. He's considered to be a special duty officer providing services that require him to be, to stay at a specific spot, whether it's at the hotel or whether it's at a football game, whether it's traffic control, where there's road construction, whether it's a funeral. I'm not answering her question. No, you are, but I'm just, your statement there just triggered something in my mind. Yes, sir. Was the money paid directly to Officer Chung from the hotel? The way the program... Or was it reimbursed to the Honolulu PD? The way the program is set up is the individual or company that is requesting the services pay directly and they also pay an administrative fee to the Honolulu Police Department, but they are to make the payment at an HPD schedule of compensation directly. Like Officer Chung got his money for his services that night directly from the hotel. That is correct, Your Honor. And it's set according to the HPD pay scale? According to the pay scale that HPD has set up for HPD special duty. He can't negotiate a higher fee with the hotel? He cannot do that. Okay, got it. So back to my hypothetical. If he's hired to basically work this event, he stays there, right? He can't run down the street to investigate a commotion? Your Honor, I do not know the HPD policy if they would say everyone come in. Perhaps he could and certainly officers coming on to the hotel if there was an altercation there that needed extra people. Then again, you'd have your special duty officer and your regular duty officer working side by side. As the Supreme Court has stated, an uncertain immunity is little better than no immunity at all. With Officer Chung, and when you look at the history and the reasons for qualified immunity, you need to protect the government's ability to perform its traditional functions. Here, this officer is being viewed by the public as a law enforcement officer. You want to be able to ensure that officers are willing to take these special duty jobs that provide a police presence. If they need security, they can hire all these private security guards. They had private security guards. They could and they could have hired additional private security guards. They did not, which is why this special duty program is for the purpose of having police presence at the events because they could otherwise just get more security guards, but obviously they see that a police presence serves the purposes of the hotel and the general public, especially at this hotel. The egress and ingress is a pretty open hotel that opens up right out onto the beach and very big opening onto the street side as well. I just spat over your time. Oh, I am going up. That happens a lot faster than I thought it would. It wasn't as painful as you thought it would be. No, Your Honor, it was not. If I may just say, because I forget I don't get rebuttal. To sum up, Judge Kobayashi got it right when she granted summary judgment in favor of Defendant Officer Chung, and we ask this Court to confirm and to follow the reasoning in Filarski. Thank you. Your Honor, this is excerpts of the record on appeal, page 110, which is the check and pay stub that shows that the hotel paid directly to Officer Chung. The idea that the HPD received some sort of administrative fee, that's news to me. I don't think there's anything in the record that would support that kind of notion. What we're dealing here with, and I leave you with this one thought, is the whole idea of calling it special duty. It's a euphemism for something that is really wrong, essentially basically evil. The comment that the U.S. Department of Justice made in its report of the New Orleans Police Department, which is in the record, that this special duty is the aorta of problems and corruption. This is just a micro example of that. Thank you. Thank you. Thank you, Counsel. We appreciate your arguments in this case. Interesting. Matter submitted.
judges: Fisher, Paez, Nguyen